597 A.2d 271

**WESBURY UNITED METHODIST COMMUNITY, Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 1991.

Decided Sept. 9, 1991.

Jeffrey K. Millin, for petitioner.

Jason W. Manne, Asst. Counsel, for respondent.

Gerald Gornish, for amici curiae.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, and BYER, JJ.

CRAIG, President Judge.

The salient issue in this case, one of first impression, is whether the Governor of the Commonwealth of Pennsylvania acted contrary to law in instructing the Budget Secretary to disregard the effective date of a raised ceiling for nursing home cost reimbursements authorized by § 443.1 of the Public Welfare Code,[1] when that date was stated in an earlier appropriation act.

1.  Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 443.1.

Wesbury United Methodist Community appeals an order of the Office of Hearings and Appeals (OHA) adopting the recommendation of an attorney examiner that the Department of Public Welfare (DPW) did not err by raising the reimbursement ceiling for nursing homes on April 1, 1988, rather than on January 1, 1988. The ceiling had been 107% of the median of year-end reported costs, and the raised ceiling is 115%.

On July 3, 1987, Governor Robert P. Casey signed into law the General Appropriation Act of 1987 (1987 Act).[2] The 1987 Act included the following provision relating to the net operating cost reimbursement ceiling for nursing homes under DPW's medical assistance program:

> For medical assistance—long-term care facilities. To provide for the department's change in methodology for setting net operating ceilings *so that the ceilings effective beginning January 1, 1988,* for each group, class and level of care *are not less than 115% of the median cost.* (Emphasis added.)

However, in May, 1988, the Governor's budget office concluded that sufficient funds did not exist to increase the net operating rate ceilings as of January 1, 1988. On January 30, 1988, the Secretary of the Budget requested a deficiency appropriation and advised the General Assembly that the increase in ceilings could not start until April 1, 1988.

The General Assembly then amended the 1987 Act with Senate Bill 938, Printer's No. 2089 (1988 Supplemental Act), which included a provision identical to that quoted above. Additionally, the 1988 Supplemental Act provided in section 21 for the deficiency appropriation to be effective

> IMMEDIATELY UPON THE CERTIFICATION BY THE GOVERNOR TO THE SPEAKER OF THE HOUSE OF REPRESENTATIVES AND THE PRESIDENT PRO TEMPORE OF THE SENATE THAT THE DEPARTMENT OF PUBLIC WELFARE IS TAKING ALL STEPS

2. Act of July 3, 1987, P.L. 459, No. 9A.

NECESSARY TO COMPLY WITH THE PROVISIONS OF THE ACT OF JULY 3, 1987 (P.L. 459, NO. 9A), KNOWN AS THE GENERAL APPROPRIATION ACT OF 1987, RELATIVE TO PROVIDING THE CHANGE FOR SETTING NET OPERATING CEILINGS AT NO LESS THAN 115% OF THE MEDIAN COST FOR MEDICAL ASSISTANCE TO LONG–TERM CARE FACILITIES. THIS CERTIFICATION SHALL BE DEPOSITED FOR PUBLICATION IN THE PENNSYLVANIA BULLETIN.

Thus the legislature purported to subject the deficiency appropriation to a condition that the Governor comply with the 1987 Act, which included the January 1, 1988 starting date for the increased reimbursement percentage, the same as the starting date reiterated in the 1988 Supplemental Act.

On June 10, 1988, the Governor signed the 1988 Supplemental Act,[3] but he instructed the budget secretary "to disregard the conditional language in Section 21 of the bill dealing with the effective date of these appropriations." The Governor's comment can be understood as referring to the January, 1988 starting date of the 115% reimbursement rate stated in the 1987 Act and reiterated in the 1988 Supplemental Act, because there is no dispute as to "the effective date of these appropriations," i.e., the effective date of the 1988 Supplemental Act as a statute, as distinguished from the starting date of the increased ceiling.

The Governor based his decision upon a conviction that the January, 1988 starting date for the raised ceiling was "substantive language," which art. 3, § 11 of the Constitution of the Commonwealth prohibits in a general appropriation bill. Specifically, art. 3, § 11 provides, in part, that "[t]he general appropriation bill shall embrace nothing but appropriations for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools."

3. Act of June 10, 1988, P.L.1934, No. 4A.

On November 18, 1988, DPW issued an interim rate notice advising Wesbury that the increase in the net operating cost ceilings to 115% was retroactive only to April 1, 1988. On December 16, 1988, Wesbury filed a notice of appeal with the OHA contending that the revised rates should be retroactive to January 1, 1988.

The attorney examiner conducted a hearing on April 12, 1990, and he recommended the denial of Wesbury's appeal on July 31, 1990. The examiner, defining "substantive" as "an essential part or constituent or relating to what is essential," Black's Law Dictionary 1281 (5th ed. 1979), concluded that a starting date for implementation of the increased ceiling is essential; therefore, it is prohibited substantive language. On August 17, 1990, the OHA adopted, without comment, the entire recommendation.

Wesbury now appeals to this court, contending that the General Assembly had the power to specify the starting date on which the increased reimbursement ceiling was to commence, and that the inclusion of such a date in the 1987 Appropriations Act does not constitute substantive language.[4]

The general question is: What is the lawful starting date of the reimbursement ceiling increase? The pivotal question is: Is the legislatively-stated starting date ineffective because it is an unconstitutional excrescence in an appropriations act?

Initially, we note that section 443.1(3) of the Public Welfare Code provides:

§ 443.1. Medical assistance payments for institutional care

The following medical assistance payments shall be made in behalf of eligible persons whose institutional care is prescribed by physicians:

---

**4.** This court's scope of review is limited to determining whether DPW's adjudication contains any errors of law, whether substantial evidence supports the findings of fact, and whether any constitutional rights have been violated. *Franklin County Nursing Home v. Department of Public Welfare*, 126 Pa.Cmwlth. 375, 559 A.2d 1002 (1989).

. . . .

(3) Rates on a cost-related basis *established by the department* for skilled nursing home or intermediate care in a non-public nursing home, when furnished by a nursing home licensed or approved by the department and qualified to participate under Title XIX of the Federal Social Security Act; [42 U.S.C.A. § 1396] (Emphasis added.)

On June 29, 1990, DPW amended its regulations to replace the rate of 107% with a new rate of 115%, which new rate was retroactively effective as of April 1, 1988. 55 Pa.Code § 1181.66.

Because the medical assistance payments for Wesbury are authorized by the Public Welfare Code, the establishment of rates must be in accordance with that Code. Section 443.1(3) states expressly that those rates are "established by the department." Therefore, the General Assembly, not having elected to amend the Public Welfare Code, has left the authority to control reimbursement rates to departmental regulation.

In the Public Welfare Code, the legislature has delegated to DPW the determination of reimbursement rates and, necessarily, the determination of the applicable time periods. DPW's regulatory adoption of the April 1, 1988 beginning date for the 115% rate, although somewhat tardily promulgated, is effective under the authority of the Public Welfare Code.

The General Assembly properly exercised its authority to appropriate specific funds to DPW for the purpose of supporting medical assistance payments. However, because the legislature has delegated the relevant rate-establishing authority to DPW, the legislature's attempt, in the appropriations acts, to establish a new starting date for a rate change went beyond a monetary appropriation, thus violating the proviso within art. 3, § 11 that "[the] general appropriation bill shall embrace nothing but appropriations . . . ."

That attempted change of one aspect of the previous statutory delegation of rate-making power was truly a purported amendment of section 443.1(3) of the Public Welfare Code, which was not an appropriation. Therefore, the OHA and its attorney examiner, in negating the January, 1988 ceiling start date in the 1987 Act, reached the right result by concluding that the January 1, 1988 starting date for the changed ceiling in the 1987 appropriations act was substantive, which, under art. 3, § 11 of the Constitution, is a nullity in an appropriation act.

Accordingly, the decision of the Office of Hearings and Appeals is affirmed.

COLINS, SMITH and BYER, JJ., dissent.

ORDER

NOW, September 9, 1991, the order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare, dated August 17, 1990, at Docket No. 24–88–277, is affirmed.